**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| CHARLES CALVIN MUCKLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:12-CV-0061-RWS |
| JOEL H. ROBINSON, | : | |
| Individually and as Sheriff of | : | |
| Barrow County, Barrow County | : | |
| Sheriff Dept.; JOHN W. BRAY, | : | |
| Individually and as an employee of | : | |
| the Barrow County Sheriff Dept.; | : | |
| GLENN AGUILAR, Individually | : | |
| and as an employee of the Barrow | : | |
| County Sheriff Dept.; C. GILES, | : | |
| Individually and as an employee of | : | |
| the Barrow County Sheriff Dept.; | : | |
| T. ZELLARS, Individually and as | : | |
| an employee of the Barrow County | : | |
| Sheriff Dept.; BARROW | : | |
| COUNTY; and BARROW | : | |
| COUNTY SHERIFF | : | |
| DEPARTMENT, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion to Dismiss [5].

After reviewing the record, the Court enters the following Order.

**Background**

This case arises out of an alleged beating that Plaintiff Charles Calvin Muckle ("Plaintiff" or "Muckle") sustained at the hands of Defendants while incarcerated at the Barrow County Detention Center in Winder, Georgia.  The facts alleged in the Complaint are as follows.[1]  On March 21, 2012 at approximately 5:40 a.m., Defendant former Deputy C. Giles ("former Deputy Giles" or "Giles") observed Plaintiff under the covers of his bed while conducting a cell check.  (Compl., Dkt. [1] ¶ 10.)  Former Deputy Giles ordered Plaintiff to uncover and make his bed.  (Id. ¶ 11.)  Giles subsequently walked to his work station and called Defendant Corporal John Bray ("Corporal Bray" or "Bray") and advised him of the situation.  (Id. ¶ 12.)

Moments later, Corporal Bray, Defendant Deputy T. Zellars ("Deputy Zellars" or "Zellars"), and Defendant former Deputy Glenn Aguilar ("former Deputy Aguilar" or "Aguilar") arrived at housing unit five and proceeded to Muckle's cell.  (Id. ¶ 13.)  At this time Deputy Zellar and Corporal Bray withdrew their O.C. Spray and sprayed Muckle, also spraying former Deputy

---

[1] Because the case is before the Court on a motion to dismiss, the facts alleged in the Complaint are accepted as true.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

2

Aguilar on his face and in his eyes.  (<u>Id.</u> ¶ 14.)  Aguilar took hold of Muckle

and slammed him to the floor.  (<u>Id.</u> ¶ 15.)  Bray, Aguilar, Zellar, and Giles

grabbed Muckle while he was on the floor and proceeded to beat him.  (<u>Id.</u> ¶

16.)  During the beating, Muckle screamed for help and offered no physical

resistance.  (<u>Id.</u> ¶¶ 17-18, 22.)  At the time of the beating, Muckle was securely

handcuffed by the wrists behind his back.  (<u>Id.</u> ¶ 21.)  As a result of the beating,

Muckle sustained multiple contusions, a black eye, and a bruised and busted lip.

(<u>Id.</u> ¶ 19.)

Based on the foregoing, Plaintiff filed a Complaint in this Court on

March 19, 2012 against former Sheriff Joel H. Robinson ("former Sheriff

Robinson" or "Robinson"), in his official and individual capacities; Bray,

Aguilar, Zellar, and Giles (collectively the "deputy Defendants") in their

official and individual capacities; Barrow County; and, finally, the Barrow

County Sheriff Department.  Plaintiff purports to raise the following claims: a

section 1983 excessive force claim against former Sheriff Robinson and the

deputy Defendants, in their official and individual capacities, and against

Barrow County and the Barrow County Sheriff Department (Compl., Dkt. [1] ¶¶

23-35; 45-49; 50-55); and state law claims for assault, battery, and intentional

AO 72A
(Rev.8/82)

infliction of emotional distress against the deputy Defendants, in their individual and official capacities, and against Barrow County and the Barrow County Sheriff Department (id. ¶¶ 36-44; 46-49).  Defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).  (See generally Defs.' Mot. to Dismiss, Dkt. [5].)  The Court sets out the governing legal standard before considering Defendants' motion on the merits.

### Discussion

### I.      Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face

when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II.      Preliminary Matters

As a preliminary matter, Plaintiff has withdrawn all claims against the Barrow County Sheriff Department. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n Br."), Dkt. [9-1] at 6 of 21.) Defendants' Motion to Dismiss [5] therefore is **GRANTED** as to all claims against this Defendant, which is **DISMISSED** from this suit.

Plaintiff additionally concedes that Barrow County is entitled to sovereign immunity, pursuant to the Georgia Constitution, against Plaintiff's

AO 72A
(Rev.8/82)

state law claims.  Accordingly, Defendants' Motion to Dismiss [5] is

**GRANTED** with respect to Plaintiff's state law claims against Defendant

Barrow County.

## III.    Analysis

As set out in the Background section, <u>supra</u>, and in accordance with the

foregoing, Plaintiff asserts the following claims against the following

Defendants: (1) a claim for excessive force, pursuant to 42 U.S.C. § 1983,

against former Sheriff Robinson in his official and individual capacities; (2) a

claim for excessive force, pursuant to 42 U.S.C. § 1983, and state law claims

for assault, battery, and intentional infliction of emotional distress against the

deputy Defendants; and (3) a claim for excessive force, pursuant to 42 U.S.C. §

1983, against Defendant Barrow County.  The Court considers Defendants'

Motion to Dismiss as to the claims raised against former Sheriff Robinson, the

deputy Defendants, and Barrow County, in turn.

A.    <u>Sheriff Jud Smith & Former Sheriff Joel H. Robinson</u>

Plaintiff asserts a section 1983 excessive force claim against former

Sheriff Robinson in both his official and individual capacities.  As Defendants

argue, Robinson was succeeded by Jud Smith as Sheriff of Barrow County,

Georgia, effective January 1, 2009—more than one year prior to the events alleged in the Complaint.  (Br. in Supp. of Mot. to Dismiss ("Defs.' Br."), Dkt. [5-1] at 1 n.1.)  Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Sheriff Jud Smith ("Sheriff Smith" or "Smith") automatically is substituted for former Sheriff Robinson as Defendant for Plaintiff's official capacity claim. The Court considers Defendants' motion to dismiss the section 1983 claim against Sheriff Smith in his official capacity before considering the motion as to the section 1983 claim against former Sheriff Robinson in his individual capacity.

### 1.    Official Capacity Claim

Plaintiff seeks to hold Sheriff Smith liable in his official capacity, pursuant to 42 U.S.C. § 1983, for alleged excessive force in violation of the Fourth and Fourteenth Amendments.  (Compl., Dkt. [1] ¶¶ 50-55.)  Defendants argue that this claim is barred by Eleventh Amendment sovereign immunity. (Defs.' Br., Dkt. [5-1] at 5.)  The Court agrees.

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

7

> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a <u>person</u> acting under color of law." <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (emphasis added) (internal quotes and citation omitted).

The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). On the contrary, states and their officials, acting in official capacities, are immune from suit under section 1983 pursuant to the Eleventh Amendment, which, absent congressional abrogation,[2] "protects a State from being sued in federal court without the State's consent." <u>Manders</u>, 338 F.3d at 1308. Eleventh Amendment immunity

---

[2] Congress did not abrogate Eleventh Amendment immunity for claims brought pursuant to section 1983. <u>Quern v. Jordan</u>, 440 U.S. 332, 338 (1979).

from suit in federal court applies not only when the state itself is sued, but also when an "arm of the state" is sued.  Id.

Defendants argue that Sheriff Smith in his official capacity is an "arm of the state" for purposes of this case, thus entitled to Eleventh Amendment immunity from Plaintiff's section 1983 claim.  (Defs.' Br., Dkt. [5-1] at 5.)  The Court agrees.  Indeed, this case is controlled by the Eleventh Circuit's decision in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), which holds that a Georgia sheriff in his official capacity "is an arm of the state . . . in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard . . . ."  Id. at 1328.  Thus, the Manders court held, a Georgia sheriff is entitled to Eleventh Amendment immunity for those particular functions.  Id.  Because this case concerns the alleged use of excessive force by sheriff's deputies at the Barrow County Detention Facility, Sheriff Smith in his official capacity is an "arm of the state" entitled to Eleventh Amendment immunity from suit. Defendants' Motion to Dismiss [5] therefore is **GRANTED** as to Plaintiff's section 1983 claim against Sheriff Smith in his official capacity, and Sheriff Smith is **DISMISSED** from the suit.

9

### 2.      Individual Capacity Claim

Plaintiff also asserts a section 1983 excessive force claim against former Sheriff Robinson in his individual capacity on a theory of failure to train and/or supervise the deputy Defendants.  (Compl., Dkt. [1] ¶¶ 50-55.)  Defendants move to dismiss this claim, arguing, among other things, that former Sheriff Robinson left the Sheriff's Office more than a year prior to the events alleged in the Complaint and, therefore, cannot be held liable for those events.  (Defs.' Br., Dkt. [5-1] at 10.)  The Court agrees.  Former Sheriff Robinson cannot be held individually liable for the incident alleged in the Complaint given that he was not Sheriff of Barrow County at the time of that incident.  See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("A Complaint will be held defective if it fails to connect the defendant with the alleged wrong.") (internal quotes and citation omitted).  Defendants' Motion to Dismiss [5] therefore is **GRANTED** as to Plaintiff's section 1983 claim against former Sheriff Robinson in his individual capacity, and former Sheriff Robinson is **DISMISSED** from the suit.[3]

_____

[3] The Court further notes that even if Plaintiff had alleged some connection between the conduct alleged in the Complaint and former Sheriff Robinson (i.e., even if former Sheriff Robinson had been sheriff at the time of the events alleged),

10

Plaintiff's section 1983 claim against him would be subject to dismissal. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. . . . Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotes and citations omitted). This causal connection may be established "when a supervisor's custom or policy results in deliberate indifference to constitutional rights . . . ." Id. (internal quotes and citation omitted).

Plaintiff's theory of liability against former Sheriff Robinson appears to be based on an alleged failure to train/or supervise the deputy Defendants with respect to use of force. (Compl., Dkt. [1] ¶¶ 53-55; see also Pl.'s Opp'n Br., Dkt. [9-1] at 9-10 of 21 ("In this case the Plaintiff was beaten to the point where he had to be taken for medical care. The Sheriff Deputies were not trained in handling the situation and it would be a question for a jury to decide."). As Plaintiff correctly states (id. at 9 of 21), to hold a supervisory official liable under section 1983 for failing to train or supervise subordinates, a plaintiff must show that the "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the Plaintiff complains." Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir. 1994). "Failure to train can amount to deliberate indifference when the need for more training is obvious . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures . . . ." Id. at 1397-98 (internal citations omitted).

In this case, Plaintiff has failed to allege any facts to show that a need for further training and/or supervision was apparent to the sheriff, such that a failure to further train and/or supervise could amount to deliberate indifference. On the contrary, Plaintiff does not allege that his experience was anything more than a single, isolated incident. Plaintiff's section 1983 claim against former Sheriff Robinson therefore fails for this additional reason.

11

B.      Deputy Defendants Bray, Aguilar, Giles, and Zellars

1.      **Official Capacity Claims**

i.      *Section 1983: Excessive Force*

Plaintiff also seeks to hold the deputy Defendants liable in their official capacities for excessive use of force, pursuant to section 1983.  For the reasons stated in connection with the Court's analysis of Plaintiff's section 1983 claim against Sheriff Smith in his official capacity (see subsection A.1., supra), the deputy Defendants in their official capacities are entitled to Eleventh Amendment immunity.  As stated above, Sheriff Smith and, therefore, his deputies, are "arms of the state" for purposes of the conduct alleged in the Complaint and therefore are immune from Plaintiff's section 1983 claim in their official capacities.  See Scruggs, 256 F. App'x at 232 (holding that sheriff's deputies sued in their official capacities, "as employees of the sheriff," share in the sheriff's Eleventh Amendment immunity); Scott v. Brown, No. 1:11-cv-1811-TWT-JFK, 2012 WL 529983, at *3 (N.D. Ga. Jan. 26, 2012) ("[P]ersons employed by the sheriff to perform his functions, if sued in their official capacities, are entitled to the same Eleventh Amendment immunity accorded the sheriff for those functions.").  Defendants' Motion to Dismiss [5] therefore is

12

**GRANTED** as to Plaintiff's section 1983 claim against the deputy Defendants in their official capacities.

        ii.     *State Law Claims*

The deputy Defendants in their official capacities also are entitled to immunity from Plaintiff's state law claims pursuant to state sovereign immunity. Under the Georgia Constitution, "sovereign immunity extends to the state and all of its departments and agencies" and "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." GA. CONST. art. I, § 2, ¶ 9(e). The Georgia Supreme Court has held that "departments and agencies" of the state include counties, which, thus, are entitled to sovereign immunity from suit in accordance with the constitutional provision. Gilbert v. Richardson, 452 S.E.2d 476, 479 (Ga. 1994). Moreover, because suits against county officials in their official capacities are in reality suits against the county, Brandon v. Holt, 469 U.S. 464, 471-72 (1985), a county official sued in his or her official capacity "is entitled to the county's defense of sovereign immunity . . . ." Nichols, 650 S.E.2d at 385.

13

For purposes of Plaintiff's state law tort claims, the deputy Defendants in their official capacities are county officials entitled to assert the county's defense of sovereign immunity.  See id. at 384-85 (holding that sheriffs are county officials under the Georgia Constitution, thus entitling sheriffs and their deputies to assert the county's defense of sovereign immunity when sued in their official capacities under state law).  This is true notwithstanding the Court's determination that Sheriff Smith and the deputy Defendants, in their official capacities, are "arms of the state" for purposes of Plaintiff's section 1983 claims.  Indeed, the Georgia Court of Appeals has explained that while sheriffs, under certain circumstances, may be characterized as state actors for purposes of liability under section 1983, for purposes of liability under state law, sheriffs are officials of the county.  See id. ("[D]epending on the circumstances, sheriffs may be deemed state agents for the purpose of determining liability for constitutional violations under § 1983. . . .  [However,], under the plain language of the Georgia Constitution[4] . . . sheriffs are county officials, not state officers or employees.").  Accordingly, Defendants' Motion

---

[4] The Georgia Constitution expressly provides that sheriffs are "county officers."  GA. CONST. art. IX, § 1, ¶ 3(a)-(b).

14

to Dismiss [5] is **GRANTED** as to Plaintiff's state law claims against the deputy Defendants in their official capacities.

### 2.    Individual Capacity Claims

#### i.    *Section 1983: Excessive Force*

Plaintiff alleges that the deputy Defendants violated the Fourth and Fourteenth Amendments to the United States Constitution by using excessive force against him.  (Compl., Dkt. [1] ¶¶ 23-35.)  Defendants move to dismiss Plaintiff's Fourth Amendment claim on grounds that the Fourth Amendment governs the use of force during an arrest and "has no bearing on the rights of an individual after his arrest."  (Defs.' Br., Dkt. [5-1] at 6.)  Defendants move to dismiss Plaintiff's Fourteenth Amendment claim for failure to allege sufficient facts to make a plausible showing of liability under <u>Twombly</u> and <u>Iqbal</u>.  (<u>Id.</u> at 12-13.)  Defendants also move to dismiss Plaintiff's excessive force claim on grounds of qualified immunity.

As a threshold matter, the Court agrees with Defendants that the Fourth Amendment is not the appropriate vehicle for Plaintiff's excessive force claim given that Plaintiff was a detainee at the Barrow County Detention Facility at

the time of the alleged use of force.[5]  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 394

(1989) ("In addressing an excessive force claim brought under § 1983, analysis

begins by identifying the specific constitutional right allegedly infringed by the

challenged application of force.") (citation omitted).  The Fourth Amendment

prohibition "against unreasonable . . . seizures" of the person governs claims of

excessive force "in the course of an arrest, investigatory stop, or other '<u>seizure'</u>

<u>of a free citizen</u> . . . ."  <u>Id.</u> at 395 (emphasis added).  By contrast, "claims

involving the mistreatment of arrestees or pretrial detainees in custody are

governed by the Fourteenth Amendment's Due Process Clause," and "the

Eighth Amendment's Cruel and Unusual Punishment Clause . . . applies to such

claims by convicted prisoners."  <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th

Cir. 1996).  Although Plaintiff does not allege whether he was a pretrial

detainee or convicted prisoner on March 21, 2010, it is clear that he was an

"inmate" of the Barrow County Detention Facility and therefore was no longer

being "seized."  (<u>See, e.g.</u>, Compl., Dkt. [1] ¶ 10 (alleging Plaintiff was asleep

---

[5] Plaintiff does not appear to dispute this assertion, as he argues in response to
Defendants' Motion to Dismiss that the deputy Defendants' alleged conduct violated
Plaintiff's rights under the <u>Eighth</u> and Fourteenth Amendments.  (Pl.'s Opp'n Br.,
Dkt. [9-1] at 6 of 21.)  Plaintiff does not argue in his brief that his excessive force
claim sounds in the Fourth Amendment.  (<u>Id.</u> at 6-7.)

in his cell); ¶ 14 (referring to Plaintiff as "inmate Muckle").  Accordingly,

Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's Fourth

Amendment excessive force claim.

Perhaps in recognition of the foregoing, Plaintiff makes no reference to

the Fourth Amendment in his brief but argues, instead, that he has stated a claim

for excessive force under the Eighth and Fourteenth Amendments.  (<u>See</u>

footnote 5, <u>supra</u>.)  Defendants contend that Plaintiff cannot state a claim under

the Eighth Amendment because the Complaint does not allege that Plaintiff was

a convicted prisoner at the time of the incident at issue.  (Defs.' Reply Br. in

Supp. of Mot. to Dismiss ("Defs.' Reply"), Dkt. [10] at 6-7.)  Indeed, the Court

notes that the Complaint itself does not purport to assert a claim under the

Eighth Amendment.  (<u>See generally</u> Compl., Dkt. [1].)  The governing legal

standard is the same, however, for both Eighth Amendment and Fourteenth

Amendment excessive force claims.  <u>Skelly v. Okaloosa Cnty. Bd. of Comm'rs</u>,

456 F. App'x 845, 848 n4 (11th Cir. 2012).  Because the legal standard is the

same, the Court considers Plaintiff's excessive force claim, whether properly

arising under the Eighth or Fourteenth Amendment.

Defendants advance two arguments in support of dismissal of Plaintiff's excessive force claim: first, that Plaintiff has failed to allege sufficient facts to show excessive force under the pleading standards of Twombly and Iqbal; and second, that even if Plaintiff had alleged a facially valid claim, the deputy Defendants are entitled to qualified immunity. Because the qualified immunity analysis requires the Court to determine whether Plaintiff has alleged a violation of a clearly established constitutional right (see discussion, infra), the Court collapses Defendants' arguments and proceeds directly to the issue of qualified immunity.

a.    Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." Cottone v. Jenne, II, 326 F.3d 1352, 1357 (11th Cir. 2003). Once

18

the defendant has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  Id. at 1358.  To discharge this burden, the plaintiff must "establish[ ] both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation."  Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (citation omitted).  The Court may consider these elements in either sequence and decide the case based on either element that is lacking.  Id.

Assuming, without deciding, that the deputy Defendants were acting within their discretionary authority during the events alleged in the Complaint, the Court finds they are nonetheless not entitled to qualified immunity at this stage in the litigation.  The Court finds that Plaintiff has alleged sufficient facts, accepted as true, to show that the deputy Defendants violated Plaintiff's clearly established constitutional right to be free from excessive force—whether arising under the Eighth or Fourteenth Amendment.

A government official's use of force is excessive under the Eighth or Fourteenth Amendments only if it "shocks the conscience."  Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009).  Use of force does not "shock the

19

conscience" "if it is applied in a good-faith effort to maintain or restore discipline." Id. (internal quotes and citation omitted).  If, however, the use of force is applied "maliciously and sadistically to cause harm, then it does 'shock the conscience,' and is excessive under the Eighth or Fourteenth Amendments." Id. (internal quotes and citation omitted).

As stated above, the qualified immunity analysis usually involves two inquiries: whether the plaintiff has shown that a constitutional or statutory right has been violated, and whether that right was clearly established at the time of the violation.  "For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights have been violated." Id. at 1216-17 (citation omitted).  The Eleventh Circuit created this rule "because, for an excessive-force violation of the Eighth or Fourteenth Amendments, the subjective element required to establish it"—i.e., malicious and sadistic use of force—"is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be in violation of the Constitution." Id. at 1217 (internal quotes and citation omitted).

AO 72A
(Rev.8/82)

In determining whether force was applied maliciously and sadistically to cause harm, courts in this Circuit consider the following factors:

(a) the need for the application of force; (b) the relationship between the need and the amount of force that was used; (c) the extent of the injury inflicted upon the prisoner; (d) the extent of the threat to the safety of staff and inmates; and (e) any efforts made to temper the severity of a forceful response.

Id. Consideration of these factors compels the Court to conclude that, based on the facts alleged in the Complaint, which the Court accepts as true for purposes of a motion to dismiss, the force used against Plaintiff was maliciously and sadistically applied to cause harm. According to the Complaint, Plaintiff was observed under his bed covers at 5:40 a.m., while Defendant Giles conducted a cell check. After being ordered to uncover and make his bed, the deputy Defendants returned to Plaintiff's cell and sprayed Plaintiff with O.C. spray. Defendant Aguilar then took hold of Plaintiff and slammed him to the floor, at which point the deputy Defendants began to beat Plaintiff. Plaintiff further alleges that during this beating, he was securely handcuffed by his wrists behind his back, screaming for help, and offering no physical resistance. Finally, Plaintiff alleges he suffered multiple contusions, a black eye, and a busted lip.

21

Accepting these allegations as true, Plaintiff received a beating at the hands of four deputies that was entirely unprovoked.  Moreover, he sustained this beating while he was securely restrained in handcuffs and offering no physical resistance.  Based on these facts, the force used against Plaintiff was not needed to achieve any legitimate end other than to inflict harm on Plaintiff.  Accordingly, Plaintiff has alleged sufficient facts to show that the deputy Defendants acted maliciously and sadistically and that their use of force shocks the conscience and violates the Eighth and Fourteenth Amendments.  Because Plaintiff has shown a violation of a clearly established constitutional right, the deputy Defendants are not entitled to qualified immunity.  Defendants' Motion to Dismiss [5] therefore is **DENIED** as to Plaintiff's section 1983 excessive force claim against the deputy Defendants in their individual capacities.

### ii. State Law Claims

Defendants move to dismiss Plaintiff's state law claims on grounds of official immunity.  The state constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the <u>negligent performance of, or negligent</u>

22

> failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. . . .

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."  Gilbert, 452 S.E.2d at 483.  Accordingly, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts [ministerial or discretionary] performed with malice or an intent to injure."  Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001).

Defendants move to dismiss Plaintiff's state law claims on grounds that the conduct alleged in the Complaint was discretionary and, thus, that the deputy Defendants may be held liable only if they acted with actual malice or intent to injure.  (Defs.' Br., Dkt. [5-1] at 17-18.)  Defendants further argue that "Plaintiff's Complaint offers only implausible facts and conclusory allegations" and "provides nothing to support any inference that Defendants' actions were undertaken with actual malice or actual intent to cause harm."  (Id. at 18.)

The Court disagrees.  Assuming, without deciding, that the deputy Defendants were performing discretionary acts during the incident alleged in the Complaint such that the standard of liability is malice or intent injure, Plaintiff has alleged sufficient facts to meet this standard.  For the reasons stated above in connection with the Court's analysis of qualified immunity (see discussion at subsection 2.i.a., supra), Plaintiff sufficiently has alleged malice or intent to injure on the part of the deputy Defendants.  The deputy Defendants therefore are not entitled to official immunity at this stage in the litigation. Defendants' Motion to Dismiss [5] is **DENIED** as to Plaintiff's state law claims against the deputy Defendants in their individual capacities.

C.    Barrow County

Finally, Plaintiff seeks to hold Barrow County liable for the deputy Defendants' alleged use of excessive force, pursuant to section 1983.  Plaintiff alleges as follows, "That given the master/servant relationship between the Defendants Barrow County Sheriff Department and Barrow County, the acts of the Defendants may be imputed to the Barrow County Sheriff Department and Barrow County."  (Compl., Dkt. [1] ¶ 49.)  Defendants move to dismiss this claim, arguing that the County may not be held liable under section 1983 on a

24

respondeat superior theory; on the contrary, Defendants argue, the County may be liable only if Plaintiff's injuries were the result of a County policy or custom. (Defs.' Br., Dkt. [5-1] at 7-8 (citing cases).)

As Defendants argue, and as Plaintiff concedes (Pl.'s Opp'n Br., Dkt. [9-1] at 7 of 21), "a municipality cannot be held liable <u>solely</u> because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell v. Dep't of Socials Servs.</u>, 436 U.S. 658, 691 (1978) (emphasis in original).  On the contrary, a municipality can be held liable for the constitutional tort of its employee only if "action pursuant to official municipal policy of some nature caused [the] constitutional tort." <u>Id.</u> <u>See also</u> <u>id.</u> at 690 ("Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. . . .  Normally random acts or isolated incidents are insufficient to establish a custom or policy." <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986).

25

The Court agrees with Defendants that Plaintiff has failed to allege sufficient facts to make a plausible showing of liability on the part of Barrow County under section 1983.  In particular, Plaintiff has alleged no facts to show that Plaintiff's injuries were the result of any policy, practice, or custom maintained by Barrow County.  Absent such allegations, Barrow County may not be held liable for Plaintiff's injuries.  Defendants' Motion to Dismiss [5] therefore is **GRANTED** as to Plaintiff's section 1983 claim against Barrow County.  As no other claims remain against Barrow County,[6] this Defendant is **DISMISSED** from the suit.

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss [5] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** with respect to Plaintiff's claims against the Barrow County Sheriff Department and Barrow County, which Defendants are **DISMISSED** from the suit.  It is **GRANTED** with respect to Plaintiff's claims against Sheriff Jud Smith in his official

---

[6] As stated in the Preliminary Matters section, Part II, <u>supra</u>, Plaintiff withdrew his state law claims against Barrow County, leaving only his section 1983 claim.

AO 72A
(Rev.8/82)

capacity and former Sheriff Joel H. Robinson in his individual capacity, which Defendants are **DISMISSED** from the suit.

It is **GRANTED** with respect to Plaintiff's section 1983 excessive force and state law claims against the deputy Defendants in their official capacities. It is also **GRANTED** with respect to Plaintiff's section 1983 excessive force claim against the deputy Defendants in their individual capacities, to the extent the claim arises under the Fourth Amendment.  It is **DENIED**, however, with respect to Plaintiff's section 1983 excessive force claim, arising under the Eighth or Fourteenth Amendment, and state law claims against the deputy Defendants in their individual capacities.  Accordingly, the only claims that remain in the suit are Plaintiff's Eighth or Fourteenth Amendment section 1983 excessive force claims and state law claims against Defendants Bray, Aguilar, Giles, and Zellars in their individual capacities.

**SO ORDERED**, this   22nd   day of January, 2012.


RICHARD W. STORY
United States District Judge

27